AUSAs: Justin L. Brooke, Jared D. Hoffman

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JUAN SANCHEZ, a/k/a "Junito,"<br><br>Defendant. | SEALED COMPLAINT  24 mj 1562<br><br>Violations of 18 U.S.C. §§ 924(c), 924(j), 1951, 21 U.S.C. §§ 841(b)(1)(A), 846<br><br>COUNTY OF OFFENSES:<br>WESTCHESTER |

SOUTHERN DISTRICT OF NEW YORK, ss.:

JUSTIN GRAY, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

### COUNT ONE
### (Conspiracy to Commit Hobbs Act Robbery)

1. Between at least on or about March 18 and March 19, 2024, in the Southern District of New York and elsewhere, JUAN SANCHEZ, a/k/a "Junito," the defendant, and others known and unknown, knowingly combined, conspired, confederated, and agreed together and with each other to commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, the defendant conspired together and with others to rob at gunpoint a warehouse that sells various unlicensed marijuana and nicotine products in Mount Vernon, New York.

(Title 18, United States Code, Section 1951.)

### COUNT TWO
### (Conspiracy to Distribute Narcotics)

2. In or about March 2024, in the Southern District of New York and elsewhere, JUAN SANCHEZ, a/k/a "Junito," the defendant, and others known and unknown, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other to violate the controlled-substance laws of the United States.

3. It was a part and an object of the conspiracy that JUAN SANCHEZ, a/k/a "Junito," the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

4. The controlled substance involved in the offense was (i) five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(A), and (ii) one thousand kilograms and more of marijuana, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Sections 846 and 841(b)(1)(A).)

## COUNT THREE
### (Firearms Use, Carrying, and Possession)

5. On or about March 19, 2024, in the Southern District of New York and elsewhere, JUAN SANCHEZ, a/k/a "Junito," the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, the drug trafficking crime charged in Count Two of this Complaint, knowingly used and carried a firearm, and in furtherance of such crime, possessed a firearm, and aided and abetted the use, carrying, and possession of a firearm, which was brandished and discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii), and (iii) and 2.)

## COUNT FOUR
### (Murder Through the Use of a Firearm)

6. On or about March 19, 2024, in the Southern District of New York and elsewhere, JUAN SANCHEZ, a/k/a "Junito," the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, the drug trafficking crime charged in Count Two of this Complaint, knowingly used and carried a firearm, and in furtherance of such crime, possessed a firearm, and aided and abetted the use, carrying, and possession of a firearm, and in the course of that crime caused the death of a person through the use of a firearm, which killing is murder as defined in Title 18, United States Code, Section 1111, and aided and abetted the same, to wit, SANCHEZ aided and abetted the fatal shooting of a victim in the vicinity of South Fifth Avenue, Mount Vernon, New York during and in relation to the drug trafficking crime charged in Count Two of this Complaint.

(Title 18, United States Code, Sections 924(j) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

7. I have been a Special Agent with the FBI since approximately January 2018. Prior to joining the FBI, I was an investigator with the Brooklyn District Attorney's Office since 2015. Over the course of my career, I have participated in numerous investigations of homicides, armed robberies, firearms offenses, conspiracies to commit violent crimes, and drug trafficking offenses. I have been personally involved in the investigation of this matter.

8. This affidavit is based upon my personal participation in this investigation, my conversations with other law enforcement personnel, and my review of law enforcement records and other evidence, and my training, experience, and advice received relating to investigations into

homicides, armed robberies, firearms offenses, conspiracies to commit violent crimes, and drug trafficking crimes. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

9. Based upon my participation in the investigation of this matter, my conversations with members of the Mount Vernon Police Department ("MVPD") and other members of the FBI investigating this matter, my review of video surveillance, and my review of related law enforcement reports and records, I have learned the following:

a. On or about March 18, 2024, at approximately 10:00 p.m., two customers (the "Customers") arrived at an address on South Fifth Avenue in Mount Vernon, New York, a wholesale warehouse that sells various unlicensed marijuana and nicotine products (the "Warehouse"). The two Customers placed an order for a large quantity of vapes and hookahs, among other items, from the Warehouse. It took employees of the Warehouse approximately two hours to prepare their order.

b. A little after midnight, on March 19, 2024, after the Customers' order was prepared, two employees from the Warehouse helped the Customers carry the boxes containing the Customers' merchandise from the Warehouse to the Customers' vehicle. At that point, according to statements provided by the Warehouse employees and the Customers, as well as video surveillance, roughly between ten and fifteen people (the "Targets"), exited a van (the "Van") that was parked near the Warehouse and ran over to the Warehouse's employees and Customers. Many of the Targets possessed and brandished firearms.

c. According to one of the two Customers, when the Targets got out of the Van, they ran over to the two employees and the Customers, pointed their firearms at them, forced them to go back inside the Warehouse, and shouted, "lay down, lay down." Still images from video surveillance outside the Warehouse during the armed robbery are depicted below:



3

 

d. Based on my review of video surveillance, I am aware that one of the Targets that jumped out of the Van and committed the armed robbery had light skin and wore a grey hooded sweatshirt, grey sweatpants, and black sneakers, as depicted in Images A and B below ("Individual-1"). Individual-1 appeared in the video surveillance to be a leader among the Targets because Individual-1 forcibly pushed other Targets inside the Warehouse and stood at the entryway to the Warehouse while appearing to shout and gesture at the other Targets in a manner that suggested he was providing instructions.

 

Image A            Image B

e. Shortly after the Targets jumped out of the Van and approached the Warehouse employees and Customers with firearms, a gunfight between the Warehouse employees and the Targets broke out.

f. At approximately 12:15 a.m., multiple MVPD officers responded to the armed robbery at the Warehouse. At the Warehouse, the MVPD officers observed a black male

lying on the floor with an apparent gunshot wound to his head. He was wearing green and white sneakers, grey and black jeans, and a black Nike hooded sweatshirt with the hood covering his face. Emergency Medical Services ("EMS") on scene pronounced him dead at 12:36 a.m. Based on a fingerprint analysis I performed on the deceased individual and my participation in this investigation, I know the identity of this deceased individual and am aware that he was one of the Targets who participated in the armed robbery of the Warehouse.

        g.      At the Warehouse, MVPD officers also observed another male lying under a shelving unit in the Warehouse, with two apparent gunshot wounds to his torso, one gunshot wound to his left upper chest, and one to the lower left abdomen (the "Victim"). EMS transported the Victim to a Mount Vernon hospital, where he was pronounced dead at 1:07 a.m. An employee of the Warehouse confirmed that the Victim was also an employee of the Warehouse.

        h.      At the Warehouse, MVPD officers recovered an AR-15 firearm, four AR spent shell casings, and three spent 9mm shell casings. According to a Warehouse employee, the AR-15 was owned by the Warehouse and stored behind the register for protection purposes. Law enforcement also seized from the Warehouse approximately 1,665 pounds of marijuana recovered in leafy form, and 1,107 pounds of Tetrahydrocannabinol-infused edibles.

        i.      Based on my participation in this investigation, I am aware that following the armed robbery, a source of confidential information[1] (the "CI") participated in voluntary interviews with the FBI and told them, in substance and in part, that he participated in the armed robbery; that an individual named JUAN SANCHEZ, a/k/a "Junito," the defendant, was one of the leaders of the plan to commit the armed robbery of the Warehouse, and that he participated in the armed robbery of the Warehouse; that another participant of the armed robbery told the CI in the presence of SANCHEZ that the group expected to rob the Warehouse of millions of dollars, kilograms of cocaine, and a large quantity of marijuana; and that that the group intended to sell the cocaine and marijuana after they stole it.

        j.      On March 20, 2024, several of the Targets were arrested and charged for their roles in the armed robbery. Following their arrests, at least one Target consented to a search of his cellphone (the "Target Cellphone") by the FBI. Based on location data obtained from the Target Cellphone, I learned that the Target Cellphone was in the vicinity of a certain building on Exterior Street (the "Exterior Street Building") in the Bronx, New York, both before and after the armed robbery. Review of surveillance video from the Exterior Street Building also indicated that individuals from the armed robbery at the Warehouse, matched through the distinctiveness of their clothing, returned to the Exterior Street Building roughly twenty to thirty minutes after the robbery at the Warehouse.

---

[1] The CI has a prior conviction for disorderly conduct. The CI has previously provided information to federal law enforcement which has proven reliable and been corroborated. The CI did not, however, disclose his involvement in this robbery until after it was completed.

5

k. The photograph below was taken at the Exterior Street Building on or about March 19, 2024, at approximately 12:37 a.m., which is approximately twenty minutes after the armed robbery of the Warehouse:



Image C

l. I compared Image C above with Images A and B of Individual-1 during the armed robbery. Based on the individual above's light skin, grey hooded sweatshirt, grey sweatpants, and black sneakers, I believe that the individual depicted above is Individual-1.

m. When shown Image C, the CI confirmed that the image depicted an individual with the nickname, "Junito" and that "Junito" was a leader of the armed robbery. When shown another image of JUAN SANCHEZ, a/k/a "Junito," the defendant, retrieved from a law enforcement database, the CI confirmed that that the individual in the picture was SANCHEZ, the same individual in Image C and whom the CI saw participate in the armed robbery.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of JUAN SANCHEZ, a/k/a "Junito," the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

_____
JUSTIN GRAY
Special Agent
Federal Bureau of Investigation

Sworn to before me this 18th day of April, 2024.

_____
THE HONORABLE ANDREW E. KRAUSE
United States Magistrate Judge
Southern District of New York